Rita A. Laube, et al. [1] v. Commissioner. Laube v. Commissioner
Docket Nos. 80825, 80903, 82256, 82587, 82588.
United States Tax Court
T.C. Memo 1961-116; 1961 Tax Ct. Memo LEXIS 235; 20 T.C.M. (CCH) 568; T.C.M. (RIA) 61116; April 25, 1961
*235 Harold Kamens, Esq., 10 Commerce Ct., Newark, N.J., and William A. Ancier, Esq., for the petitioner in Docket No. 80825. Herbert L. Zuckerman, Esq., 60 Park Place, Newark, N.J., for the petitioners in Docket Nos. 82256, 82587 and 82588. David Zuckerman, Esq., 60 Park Place, Newark, N.J., for the petitioner in Docket No. 80903. Sheldon Seevak, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion These consolidated cases involve respondent's determination of income tax deficiencies and additions to tax of the respective petitioners as follows: Additions
to Tax
Defi-
Sec. 293(a),
Year
ciency
I.R.C. 1939
Rita A. Laube
Docket No. 80825
1947
$ 6,740.67
1948
4,672.32
1949
2,096.99
1950
776.46
1952
3,337.02
1953
1,863.69
Clara A. Meier
Docket No. 82587
1947
$ 3,410.81
$ 194.98
Docket No. 82588
1948
32,048.48
1,602.37
Docket No. 82256
1949
15,754.44
1950
13,978.66
1951
3,412.58
Gregor A. Meier
Docket No. 80903
1949
$15,754.44
1950
13,978.66
1951
3,412.58
After certain concessions by each of the parties, the primary remaining issue common to all of the *236 dockets is whether petitioner Rita A. Laube was a limited partner in a partnership known as Oilchem Co. If she was, then her proper share of the distributive income therefrom affects not only her tax liability, but also those of the other petitioners who were concededly members of the partnership. Subsidiary questions, assuming that Rita was a partner during the early part of the period, are (1) whether she sold her partnership interest either in 1949 or 1951, with the consequence that certain amounts received thereafter by her would qualify as capital gain rather than ordinary income; and (2) whether the portions of her distributive share of the partnership income which were not distributed to her in 1947 and 1948 were deductible by her as bad debts. Findings of Fact The stipulated facts are incorporated herein by this reference. Petitioner Rita A. Laube resides at 250 Lotte Road. Ridgewood, New Jersey. She filed individual income tax returns for the taxable years involved at Newark, New Jersey. Petitioner Clara A. Meier resides at Jolimont 11, Fribourg, Switzerland. During the periods in controversy, she was a resident of the State of New Jersey. She filed an individual income *237 tax return for the taxable year 1947 at Newark, New Jersey. Petitioner Gregor A. Meier resides at Kampfe Lake, Bloomingdale, New Jersey. Clara and Gregor were husband and wife during, and filed joint income tax returns for, the taxable years 1948 to 1951 inclusive at Newark, New Jersey. Petitioner Rita A. Laube and Charles A. Laube were husband and wife. Charles died testate on August 31, 1946, naming Rita as the executrix and sole beneficiary of his will. Prior to January 2, 1945, Charles held a one-third interest in Oilchem Co., Inc., a corporation engaged in the business of selling and distributing chemicals, dyestuffs, detergents, oils, finishes and allied lines, on a commission basis. On December 29, 1944, the corporation was dissolved. On January 2, 1945, Charles and petitioners Gregor A. and Clara A. Meier formed a partnership called Oilchem Co. to carry on the business of the dissolved corporation. The partnership agreement provided, among other things, that each partner could sign partnership checks; that each partner was required to devote as much time and attention to the partnership business as was necessary to carry out the objects and purposes; that the net profits *238 should be distributed as follows: Charles should receive one-half of all commissions earned by reason of sales made to Cliffside Dyeing Corporation and the balance of the net profits should be distributed between Gregor and Clara; that the losses were to be divided on the same basis as the amount allocated to each partner bore to the total net profit of the preceding year; and that on the demise of Charles the partnership should come to an end and a limited partnership agreement should be drawn by the surviving partners, admitting Leopold Frankel as trustee for petitioner Rita A. Laube, a limited partner. On April 24, 1945, Charles and the Meiers executed an additional agreement which recited, among other things, that in May, 1940, Gregor had made a gift to Charles of a one-third stock interest in the former Oilchem corporation, that the commissions and salary which Charles received from the corporation were equal to one-half of the commissions earned by the corporation by reason of sales made to Cliffside Dyeing Corporation, and that Charles now desired to give back his one-third interest in the dissolved corporation to Gregor. It was therefore agreed that Charles thereby returned *239 the stock interest to Gregor, that Charles waived any interest in the partnership except such as would during his lifetime give him a one-half interest in the commissions earned by reason of sales made by the partnership to Cliffside, that upon Charles' death his interest in the commissions of the partnership would cease except as to commissions earned on sales to Cliffside to the date of his death, that the Meiers would give Charles the interest in the commissions of the partnership as stipulated, and that the agreement would be binding on the parties and their heirs, executors, administrators, and assigns. On May 25, 1945, Charles, Rita, the Meiers, and Leopold Frankel (as "trustee") executed still another agreement which, among other things, recited that Charles had a stock interest in the former Oilchem corporation and had a commission interest in the new Oilchem partnership, that Charles by will had bequeathed his interest in the partnership to Rita, and that it was the desire of the parties that the partners should continue, to function after the death of Charles and that the interest of Rita should be protected. In consideration of these recitations and the sum of $1.00 paid *240 by each of the parties to the other, it was mutually agreed that upon Charles' death Rita would assign her interest in the partnership to Leopold Frankel, as trustee, and the Meiers would form a limited partnership with the trustee as a limited partner and themselves as general partners, that the trustee would act for Rita and collect her interest in commissions or profits, that on Rita's death or the dissolution of Cliffside Dyeing Corporation the limited partnership would end and all obligations and liabilities of the Meiers to the trustee would end, and that upon the death of one of the Meiers the limited partnership between the trustee and the survivor would continue. On June 5, 1945, Rita and Leopold Frankel executed an agreement in which Rita appointed Frankel as trustee to represent her limited partnership interest in the limited partnership to be formed by the Meiers upon Charles' death pursuant to the agreement of May 25, 1945. After Charles' death on August 31, 1946, no formal limited partnership agreement was executed and no other agreements, except as noted hereinafter, were executed. Beginning in September of 1946, Oilchem Co. began paying Rita $750 per month from *241 the commissions it earned on sales to Cliffside Dyeing Corporation. Rita never participated in the management of Oilchem, never had anything to do with the sales to Cliffside, and never discussed the affairs of the partnership with the Meiers. During the year 1947 Rita actually received $9,000 from the partnership. This receipt was not reflected in her individual income tax return for that year. However, the 1947 fiduciary income tax return of Charles' estate which Rita signed as executrix showed a receipt of $9,000 from Oilchem Co. as an installment payment on a sale in 1946 of Charles' interest in the partnership. [2] Oilchem's partnership return for 1947 showed the Meiers and Charles' estate as the partners and showed the partners' shares of net income to be $17,070.48 for each of the Meiers and $18,505.78 for the "Est. of Chas. A. Laube". Leopold Frankel, attorney for Oilchem Co. during all the tax years in issue, prepared its income tax returns as well as the returns of Rita and Charles' estate. *242 In the year 1948 Rita actually received $10,927.03 from Oilchem Co., but again she did not report this receipt on her individual income tax return. However, the fiduciary income tax return for Charles' estate for 1948, which Rita signed as executrix, reported this exact amount as a long-term capital gain from an installment payment on the sale in 1946 of the Oilchem Co. interest. Oilchem's partnership return for 1948 showed "Rita A. Laube, Exec." with a partner's share of income of $15,665.95. Again, Leopold Frankel prepared all three returns. On October 20, 1949. Rita and Gregor (who was acting for the partnership) entered into an agreement. It was in the form of a letter from Gregor to Rita which Rita signed and returned to note her acceptance and read as follows: On behalf of Clara and myself, acting for Oilchem Company, this will express our agreement. 1. All services in connection with Oilchem will be performed by Clara and me. 2. All losses will be borne by us. 3. For the interest which Charlie had in Oilchem at the date of his death, you agree to accept $100,000 as payment in full on the following terms: A. Any sums paid since his death shall be applied against *243 $100,000. B. As in the past, so in the future, $750.00 per month shall be paid to you out of net Cliffside commissions earned, until: (a) I, Gregor A. Meier, die, or (b) You, Rita A. Laube, die, or (c) Gregor A. Meier's connection with Cliffside ceases, when any unpaid balance shall be waived. 4. If because of the method of paying you out, Clara and I incur any additional tax liability as partners of Oilchem, you will reimburse me. During the year 1949 Rita actually received $9,000 from Oilchem Co. However, on her 1949 individual income tax return, Rita reported the receipt of $12,520.40 as long-term capital gain on the sale in 1946 of "Oilchem Co. partnership interest". She reported no other income from the partnership in 1949. Rita's partner's share of net income on the Oilchem Co. partnership return in 1949 was $12,520.40. The partnership return also showed that the Estate of Charles A. Laube as a partner had a total capital account at the end of the taxable year of $19,692.13. [3] Leopold Frankel prepared both Rita's and Oilchem's income tax returns. *244 In the year 1950 Rita actually received $14,000 from Oilchem Co., which she originally reported in full as ordinary income on her individual income tax return for that year. However, on April 2, 1952, Rita filed a Claim for Refund with the Commissioner of Internal Revenue, claiming that the $14,000 reported as ordinary income in 1950 should have been reported as capital gain. Oilchem's partnership return for 1950 showed $14,000 as Rita's partner's share of net income. Leopold Frankel prepared the partnership return and Rita's original return for 1950. On July 10, 1951, Rita and Gregor (who represented the partnership) entered into another letter agreement which modified the prior agreement of October 20, 1949, and read as follows: A meeting was held on July 7, 1951, at the office of Frankel & Frankel of Paterson, New Jersey, at which the following appeared: Rita A. Laube Peter L. Mazzarella, C.P.A., representing Rita A. Laube Gregor A. Meier Leopold Frankel was present but he took no part in reaching the modification agreement hereinafter set forth. It was agreed to modify letter dated October 20, 1949 which represented the agreement between Rita A. Laube and the Oilchem *245 Company, as follows: (1) Against the total to be paid to you of $100,000, we have paid you as follows: 1946
$ 2,250.00
1947
9,000.00
1948
10,927.03
1949
9,000.00
1950
14,000.00
Jan. 1951
750.00
Feb. 1951
750.00
Mar. 1951
750.00
Apr. 1951
750.00
May 1951
750.00
June 1951
750.00
July 1951
750.00
Total
$50,427.03
Leaving a balance due July
5, 1951
$49,572.97
(2) The said balance will be liquidated as follows: (a) At the rate of $1,250 per month; and (b) In addition to the monthly payments under "2(a)" above, as and when cash is available, a total of $19,692.13 forming a part of the sum of $49,572.97 until such total of $49,572.97 shall have been paid, and such payment shall constitute a release and discharge of Oilchem Company and each of its partners from all further liability or obligation to you and shall terminate any interest which you, both as Executrix of the Estate of Charles A. Laube, Deceased, and individually, may have in the said Oilchem Company. (3) The obligation to pay the aforesaid balance of $49,572.97 shall survive the death of Gregor A. Meier. (4) In all other respects the agreement embodied *246 in letter dated October 20, 1949 shall remain in full force and effect. Oilchem's partnership return for 1951 indicated that the $19,692.13 which stood in the capital account for the Estate of Charles A. Laube was withdrawn during the year. The net income of the partnership was divided equally between the two Meiers on this return as orginally filed, and Rita A. Laube, Exec., no longer was listed as a partner entitled to a share of net income. However, petitioner Gregor A. Meier amended his petition in Docket No. 80903 in the present proceedings to allege that the partnership actually paid $11,500 to the Estate of Charles A. Laube in 1951 pursuant to the letter agreement of October 20, 1949, and that therefore there was a proportionate decrease in the distributive shares of partnership income of the remaining partners, Gregor and Clara. Gregor consequently claimed an overassessment of income tax in 1951. On her 1952 and 1953 individual income tax returns, Rita showed the receipt of $15,000 each year from Oilchem Co. as long-term capital gain "received on account of sale of Oilchem Co. partnership interest", acquired in 1946, sold in 1949, and having a basis of zero. These returns *247 were prepared for Rita by Peter L. Mazzarella. In a letter dated March 27, 1953, Rita wrote to Leopold Frankel requesting copies of Oilchem Co. statements for the years 1951 and 1952, "so that I can check the amount of moneies due me as a partner". On March 30, 1953, Frankel replied by letter [4] as follows: We have communicated with the partners of Oilchem Company for instructions in this regard, and we have been informed that they regard your agreement of October 20, 1949, as modified by your agreement of July 10, 1951, as terminating any partnership interest you may have had in the said Oilchem Company as at October 20, 1949. Accordingly, they have instructed us not to comply with your request for statements of Oilchem Company for the years 1951 and 1952. Rita received the last of the payments totaling $100,000, as calculated pursuant to the *248 agreements of October 20, 1949, and July 10, 1951, in late 1953 or early 1954. The Commissioner, in order to protect the revenues, sent inconsistent deficiency notices to Rita and the Meiers. Rita's deficiencies are based on the assumption that she was a limited partner during all the tax years in question and either failed to report her proportionate share of net partnership income (1947, 1948) or incorrectly reported all or part of it as capital gain rather than ordinary income (1949, 1952, 1953). The Meiers' deficiencies are based on the assumption Rita was not a limited partner during the tax years in issue and consequently that the Meiers should have together reported all of the partnership's net income. The parties to these proceedings were all previously before this Court in , affirmed per curiam, (C.A. 3). By stipulation of the parties, the entire record of the prior case was made a part of the record of the present case by reference. The prior case involved only the taxable year 1946 and was concerned with the issue whether Rita was a limited partner in Oilchem Co. during that year. All of the *249 agreements [5] introduced in this case were also introduced and considered by the Court in the prior case. Rita was the only witness in the first case. Gregor A. Meier and Leopold Frankel, who testified in the present case in addition to Rita, were present at the hearing of the prior case but were not called by any of the parties to testify.
The Court made the following ultimate findings of fact in : Charles did not sell his interest in the Oilchem Company partnership by virtue of the agreement of April 24, 1945. Rita did not acquire Charles's partnership interest by gift by virtue of the May 25, 1945 agreement. Rita became a limited partner in the Oilchem Company partnership at Charles's death in 1946. Rita did not sell her limited partnership interest to the partnership in 1946. Rita was a limited partner in Oilchem Co. from January 1, 1947, to October 20, 1949. Rita sold her limited partnership interest by virtue of the agreement of October 20, 1949, as *250 modified by the agreement of July 10, 1951. Opinion RAUM, Judge: 1. The question of Rita A. Laube's status in relation to Oilchem, from January 1, 1947, up to at least October 20, 1949, is identical with the issue decided against her for the year 1946 in , affirmed per curiam, (C.A. 3), involving the same litigants. The same written agreements which the Court was called upon to consider in the earlier case are likewise the focal point of conflict here. The Court held in , that Rita became a limited partner in Oilchem upon her husband's death in 1946, that she did not sell her partnership interest in 1946, and that she was accountable for her distributive share of the partnership earnings in 1946 even though she did not in fact receive her full share during that year. That decision is certainly conclusive as to her status as of the end of 1946; and whether we rely upon the doctrine of collateral estoppel (cf. ; , affirmed, (C.A. 4), certiorari *251 denied, ; (C.A. 3), affirming a Memorandum Opinion of this Court; but cf. (C.A. 5), reversing in part ), or whether we reexamine the question on the merits, we reach the same result for the period up to October 20, 1949. There is no evidence in the record that would justify a finding that Rita sold her partnership interest between January 1, 1947, and October 20, 1949. Nor is there any showing that there was any significant change in the facts during the period January 1, 1947, to October 20, 1949, in relation to the situation that existed immediately prior to that period. The facts before us, even assuming that we were warranted in reexamining the issue, do not justify reaching a different result from the one announced in the earlier case. 2. A different situation is presented, however, beginning with October 20, 1949. The letter agreement of that date as well as the one of July 10, 1951, introduced new elements that did not govern Rita's status prior to October 20, 1949. Indeed, the Court in the earlier case stated that: "If *252 Rita ever sold her partnership interest she did so under the agreement of October 20, 1949." In view of the change in facts as of October 20, 1949, we think it plain that the doctrine of collateral estoppel cannot apply with respect to the period commencing with that date, and we proceed to consider whether Rita may be treated as a partner from that time forward. Although the matter may not be completely free from doubt - and there is evidence in the record pointing in both directions -, we think that, after weighing all the evidence, the agreement of October 20, 1949, had the effect of a sale of Rita's partnership interest in Oilchem. The agreement fixed $100,000 as the maximum amount which she would receive "for the interest which Charles [Rita's deceased husband] had in Oilchem at the date of his death." To be sure, the monthly payments of $750 were to be made out of "net Cliffside Commissions", and there were other conditions that could affect her right to the payments. But, on balance, we think that the substance of the agreement was a sale of her partnership interest for $100,000 minus her share of the distributive earnings up to October 20, 1949. The agreement of July 10, 1951, increased *253 the monthly payments to $1,250 and modified some of the rights of the parties inter sese, but in our opinion it did not alter the basic character of the transaction as a sale. The amounts paid to her under both agreements represent capital gain rather than ordinary income, except to the extent of $19,692.13 which did not represent income at all to her at the time she received it. The latter amount represents her capital account on the partnership books as of October 20, 1949, and reflects in major part that portion of her share of distributive earnings that had not theretofore in fact been paid over to her. As indicated above, such earnings were chargeable to her during the prior years, but did not constitute income in any later year when they were actually distributed. The remainder of the foregoing amount of $19,692.13 reflects Rita's capital in the partnership which she inherited from her husband, and, of course, the return of such capital does not constitute income to her. The present case is unlike such cases as (C.A. 2), and , relied upon by petitioners Meier, where the lump sums paid to *254 the retiring partner were in effect merely commuted payments in lieu of his share of partnership earnings accrued or attributable to activities prior to his withdrawal from the partnership. Compare , and (C.A. 3), where the lump sums were regarded as consisting of two components, one a distributive share of earnings up to the date of the partner's withdrawal, taxable as ordinary income, and the second an amount representing capital gain upon disposition of his interest in the partnership. 3. There remains for disposition a final alternative contention made by Rita that she is entitled to bad debt deductions for the years 1947 and 1948 for the amount of partnership income which was allocated to her as her partner's share in those years but not paid to her by the partnership. There is no merit to this argument. Rita has offered no evidence that these so-called debts (in fact, increases in her partnership capital account) became worthless in the years in question. On the contrary, the agreement of July 10, 1951, specifically provided that her $19,692.13 capital account (which included the *255 1947 and 1948 differentials in question) would be paid to her as a part of the total of $100,000, and there was testimony that she subsequently was paid the remainder of the $100,000 due her. Hence, it is apparent that Rita did not suffer the losses she alleges in 1947 and 1948 and, in fact, she never suffered such losses. We do not pause to consider other possible fatal objections to her position on this point. We conclude that Rita was a limited partner in Oilchem up to October 20, 1949, that she sold her interest on that day, that she is chargeable with her distributive share of earnings up to that time, and that the amounts received by her thereafter constitute capital gain rather than ordinary income except to the extent of $19,692.13 which was not income at all when received by her. The liabilities of the petitioners Meier must be determined in accordance with these conclusions. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Gregor A. Meier, Docket No. 80903; Clara A. Meier, Docket Nos. 82256, 82587 and 82588.↩
2. The estate's original 1946 fiduciary income tax return showed $4,612.58 ordinary income from Oilchem Co. An amended return for 1946, filed on May 4, 1948, after the filing of the 1947 return, showed no ordinary income from the partnership in 1946 but rather $2,250 as a return of capital on sale in 1946 of interest in Oilchem Co.↩
3. When Charles died in 1946, there was $2,982.76 in his partner's capital account. This account was increased each year thereafter by the difference between the partner's share of net income attributed to Rita and the amount actually paid to Rita during the year. Thus, in 1949 when Rita's partner's share of net income was $12,520.40 and her actual withdrawals amounted to only $9,000, the capital account standing in the name of the estate was increased by the difference of $3,520.40.↩
4. A copy of this reply letter was introduced in evidence as part of the record in , affirmed per curiam, (C.A. 3). As hereinafter indicated, the entire record of that earlier proceeding was made a part of the present record by stipulation of the parties.↩
5. The partnership agreement of January 2, 1945, the additional agreements of April 24, 1945, May 25, 1945, and June 5, 1945, and the letter agreements of October 20, 1949 and July 10, 1951.↩